
FILED
2015 Mar-30  PM 01:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| TIMOTHY JARROD COLBURN ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 6:14-cv-01942-LSC |
| ) | |
| BLAIR HUDDLESTON, et al., ) | |
| ) | |
| Defendants. ) | |
| JOSEPH ANTHONY ELLIOTT, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 6:14-cv-01943-LSC |
| ) | |
| BLAIR HUDDLESTON, et al., ) | |
| ) | |
| Defendants. ) | |
| DAVID EDWARD RHODES, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 6:14-cv-01944-LSC |
| ) | |
| BLAIR HUDDLESTON, et al., ) | |
| ) | |
| Defendants. ) | |

| | | |
|---|---|---|
| DANIEL RUDOLPH CASSELS, JR., | ) | |
| Plaintiff; | ) | |
| vs. | ) | 6:14-cv-01945-LSC |
| BLAIR HUDDLESTON, et al., | ) | |
| Defendants. | ) | |
| TODD MICHAEL HARRISON, | ) | |
| Plaintiff; | ) | |
| vs. | ) | 6:14-cv-01946-LSC |
| BLAIR HUDDLESTON, et al., | ) | |
| Defendants. | ) | |

## Memorandum of Opinion

Plaintiffs Timothy Jarrod Colburn ("Colburn"), Joseph Anthony Elliott ("Elliott"), David Edward Rhodes ("Rhodes"), Daniel Rudolph Cassels, Jr. ("Cassels"), and Todd Michael Harrison ("Harrison") bring these actions under 42 U.S.C. § 1983, seeking damages based on their prolonged detention in the Walker County Jail following a warrantless arrest for suspected methamphetamine possession and manufacture. Before the Court are Defendants Blair Huddleston and John Mark Tirey's motions to dismiss.(Doc. 13 in Case No. 7:14-cv-1942-LSC; Doc. 16 in Case

No. 7:14-cv-1943-LSC; Doc. 15 in Case No. 7:14-cv-1944-LSC; Doc. 14 in Case No. 7:14-cv-1945-LSC; Doc. 14 in Case No. 7:14-cv-1946-LSC.) The issues have been fully briefed and are ripe for review. For the reasons stated below, the motions are due to be granted.

## I.  BACKGROUND [1]

Colburn, Elliott, Rhodes, Cassels, and Harrison were arrested without a warrant for suspicion of drug crimes on October 10, 2013.[2] Defendant Blair Huddleston, a deputy with the Walker County Sheriff's Office, was the arresting officer. At all times relevant to this suit, Defendant John Mark Tirey was the elected sheriff of Walker County, Alabama.

Plaintiffs were booked into the Walker County Jail (the "Jail") following their arrests. On October 11, 2013, Elliott, Rhodes, Colburn, and Cassels were taken before a Walker County magistrate for their initial appearance hearings.[3] During this hearing,

---

[1] In a 12(b)(6) motion, the Court must accept as true a plaintiff's factual allegations and construe them in his favor as the non-moving party. *Chepstow, Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004).

[2] The Complaint and other relevant documents contain very little information about the arrests. However, Plaintiffs do not allege that the arrests were without probable cause.

[3] Plaintiffs' complaints do not allege that Plaintiffs were taken before a magistrate and had a bond set for their release. However, Huddleston and Tirey have attached to their motions to dismiss court documents showing that Colburn, Rhodes, Cassels, and Elliott were taken before a magistrate for an initial appearance and bond hearing. This Court may consider these court records, even at the 12(b)(6) stage. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000)

the magistrate set a bond amount for Elliott, Rhodes, Colburn, and Cassels. However, Plaintiffs assert that the magistrate did not make a probable cause determination concerning Plaintiffs' warrantless arrests. Unlike the other Plaintiffs in this action, Plaintiff Harrison was not taken before the Walker County magistrate for an initial appearance and bond hearing on the day following his arrest. Rather, he made no court appearance until October 28, 2013.

On November 14, 2013, Colburn filed a petition for habeas relief, arguing that he had been detained for a prolonged period of time without a probable cause hearing being held following his warrantless arrest. On November 15, 2013, Defendant Huddleston filed a criminal complaint and obtained arrest warrants for Plaintiffs Colburn, Rhodes, Cassels, and Elliott. Colburn was released from the Jail on November 19, 2013, following the granting of his habeas petition, but Cassels, Rhodes, and Elliott were not released until November 21, 2013. Harrison was released from the Jail three days later, on November 24, 2013. Huddleston filed a criminal complaint and obtained an arrest warrant for Harrison on January 3, 2014.

The Plaintiffs filed separate actions against Huddleston and Tirey in both their

---

(stating that "a court ordinarily may treat documents from prior state court adjudications as public records," and thus may consider such documents without converting a 12(b)(6) motion into a motion for summary judgment (citing *Henson v. CSC Credit Servs., Inc.*, 29 F.3d 280, 284 (7th Cir. 1994))).

individual and official capacities on October 10, 2014. Plaintiffs' cases were consolidated December 4, 2014 pursuant to an unopposed motion to consolidate. Plaintiffs allege that Defendants violated their Fourth Amendment rights when, following Plaintiffs' arrests, Defendants detained Plaintiffs for longer than forty-eight hours without a probable cause hearing. Plaintiffs also bring a § 1983 claim against Tirey for failure to train and supervise. Finally, Plaintiffs seek injunctive relief ordering Defendants to cease their "practice of deliberate indifference . . . of detaining and confining citizens without seeking a warrant" following a warrantless arrest.[4] Both Tirey and Huddleston have raised the defense of qualified immunity for claims brought against them in their individual capacities. Huddleston and Tirey also argue that they have Eleventh Amendment-derived immunity from suit for money damages brought against them in their official capacities.

## II.   STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading that seeks a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must also contain

---

[4] Plaintiffs also asserted various state law claims against the Defendants, including claims of negligence/wantonness and outrage. However, Plaintiffs have abandoned these claims, conceding that the Alabama Constitution of 1901 grants Tirey and Huddleston immunity from the claims. *See* Ala. Const. art I, § 14; *see also* Doc. 22, at 7 n.4 (conceding that Defendants are immune from suit with respect to the state law claims in this action).

a "demand for the relief sought, which may include relief in the alternative or different types of relief."

"Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 1950 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678, 129 S. Ct. at 1949 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S. Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007).

In reviewing the complaint, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. The Court must consider

the "face of the complaint and attachments thereto" to determine whether the Plaintiff states a claim for relief. *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1253 n.13 (11th Cir. 2013). A plaintiff need not plead each element of the cause of action but must plead "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011 (internal quotations omitted).

## III. Discussion

### A. Claims Against Defendants in Their Official Capacities

Plaintiffs sue Tirey and Huddleston in both their individual and official capacities. However, the Eleventh Amendment bars suits for money damages brought against state officials in their *official* capacity. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (stating that "[u]nder the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court" (citing *Kentucy v. Graham*, 473 U.S. 159, 169 (1985))). Alabama sheriffs and sheriffs' deputies are considered state officials under the Alabama Constitution and thus are entitled to Eleventh Amendment-derived immunity from suits for damages. *See Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that sheriffs in

Alabama are state officials, and thus are entitled to immunity under the Eleventh Amendment when sued in their official capacities); *see also Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990) (holding the same with respect to sheriffs' deputies in their official capacities). Consequently, to the extent that Plaintiffs assert claims for money damages against Defendants in their official capacities, those claims are due to be dismissed. The Court will examine Plaintiffs' claim for injunctive relief below, see *infra* Part III.C, as the Eleventh Amendment does not bar claims for prospective relief brought against state actors in their official capacity.

## B.   Claims Against Defendants in Their Individual Capacities

### 1.   *Direct § 1983 Claims for Unlawful Detention*

Plaintiffs assert that Defendants violated their Fourth Amendment rights when, following their warrantless arrests and booking into the Jail, Defendants subjected Plaintiffs to a prolonged detention without a probable cause determination.[5] It is without question that, in order to continue to detain a suspect following a warrantless

---

[5] There has been much debate between the parties as to which constitutional amendment, if any, affords plaintiffs a cause of action in this case. The Fourth Amendment will be addressed as the potential source of Plaintiffs' cause of action, since the Fourteenth Amendment's Due Process Clause begins to impose limitations on an individual's period of confinement only after an initial probable cause hearing is held. *See Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992) (stating that "the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause").

arrest, the state must obtain a "fair and reliable determination of probable cause" by a neutral judge or magistrate "promptly after the [warrantless] arrest." *See Gerstein v. Pugh*, 420 U.S. 103, 125 (1975); *see also Powell v. Nevada*, 511 U.S. 79, 80 (1994) (stating that failure to conduct a prompt probable cause hearing following a warrantless arrest is a violation of the Fourth Amendment's prohibition on unreasonable seizures). In addition, the United States Supreme Court has stated that the "prompt" determination of probable cause generally requires that a probable cause hearing be held within forty-eight hours of the warrantless arrest. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

Plaintiffs Colburn, Elliott, Cassels, and Rhodes allege that they were detained for thirty-six days without either a warrant being issued for their arrest or a probable cause hearing being held. Plaintiff Harrison alleges that he was detained for forty-four days without these actions being taken. While Defendants offer court records showing that four of the five Plaintiffs—Colburn, Cassels, Elliott, and Rhodes—were taken before a magistrate within forty-eight hours of their arrests for an initial appearance, these documents do not indicate that any sort of probable cause determination was made. These allegations are sufficient to state a potential violation of Colburn, Rhodes, Cassels, and Elliott's Fourth Amendment rights. Harrison's case for a

constitutional violation is even more straight-forward, as Defendants do not dispute that Harrison remained in the Jail for over two weeks without any contact with a magistrate.

### 2. Qualified Immunity with Respect to Unlawful Detention Claims Brought By Cassels, Rhodes, Elliott, and Colburn

Huddleston and Tirey argue that, even if the Court were to decide that Plaintiffs allege a violation of their Fourth Amendment-derived right to a probable cause determination, Defendants should nonetheless be immune from suit based upon qualified immunity. An official acting within the scope of his employment is "shielded from suit against him in his individual capacity if, while performing his discretionary function, his conduct did not violate a clearly established right of which a reasonable person would have known." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When deciding whether a right is "clearly established," courts must define the right at issue with specificity, taking into account the unique facts of the case. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (stating that "we have instructed that courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). Plaintiffs have conceded that Huddleston and Tirey were acting within their discretionary authority. Thus, this Court need only

determine whether the right in question was "clearly established" at the time the alleged violation occurred, and whether Huddleston and Tirey are properly chargeable with the violation of those rights.

Considering the unique factual contours of this case, Deputy Huddleston and Sheriff Tirey did not commit a constitutional violation of a "clearly established" right with respect to Plaintiffs Colburn, Elliott, Cassels, and Rhodes. According to the court records submitted by Defendants, these Plaintiffs appeared before a Walker County magistrate the day following their warrantless arrests. The state court record also shows that Plaintiffs were informed of numerous pretrial rights and advised that they had a right to a probable cause determination with respect to the continued prosecution of their case.[6] Plaintiffs also had a bond set for them by the magistrate.

Rule 4.3(a)(1)(iii) of the Alabama Rules of Criminal Procedure provides in part that, upon an arrest without a warrant, a state judge or magistrate "shall determine whether probable cause exists to believe that the defendant committed the charged offense." *See* Ala. R. Crim. P. 4.3(a)(1)(iii).[7] The fact that the magistrate apparently

---

[6] *See, e.g.*, Doc. 14-1 in Case No. 7:14-cv-1942-LSC. A similar "initial appearance" form was submitted for Harrison, but it is uncontested that the initial appearance took place well outside *Riverside*'s forty-eight-hour window.

[7] Ala. R. Crim. P. 4.3 provides exceptions to the probable cause determination requirement that do not apply in these cases.

failed to conduct a probable cause hearing as called for by Rule 4.3 following Plaintiffs' warrantless arrests is not, according to the facts alleged, a violation of Huddleston or Tirey's doing. In other words, Cassels, Colburn, Elliott, and Rhodes appeared promptly before a neutral magistrate, and it is not the place and responsibility of the Defendants, who were law enforcement officials, to question or direct the magistrate, who was acting as a court official, as to the proper performance of his or her responsibilities. Given these unique circumstances, this Court cannot say that a "reasonable official" in Defendants' positions would have taken any actions that differed from those taken by Huddleston and Tirey.

Plaintiffs point to Ala. R. Crim. P. 4.3(a)(1)(iii) as putting Defendants on notice that, unless Plaintiffs were provided a probable cause hearing within forty-eight hours of their arrest, Defendants were required to release them under a minimum appearance bond. Rule 4.3(a)(1)(iii) states that, following a warrantless arrest, the arrestee

> [s]hall be afforded an opportunity to make bail in accordance with Rules 4.3(b) and 4.4. A judge or magistrate in the county of arrest shall determine whether probable cause exists to believe that the defendant committed the charged offense. . . . *If a probable cause determination is not made by a judge or magistrate without undue delay, and in any event later than forty-eight (48) hours after arrest, then . . . the person should be released upon execution of an appearance bond set in the amount of minimum bond.*

Ala. R. Crim. P. 4.3(a)(1)(iii) (emphasis added).

Plaintiffs are correct that Rule 4.3(a)(1)(iii) mandates that warrantless arrestees have a minimum bond set in the event that no magistrate makes a probable cause determination within forty-eight hours of the arrest. However, an arresting officer and county sheriff cannot be expected to review the performance of a court official and determine when and if that neutral court official complies with the Rules of Criminal Procedure. Once the magistrate set the bonds for Cassels, Colburn, Elliott, and Rhodes, law enforcement did not have the authority to release them from detention without the judicially-set bond amount first being posted. Furthermore, even if the Defendants had some duty to recognize a failure by the judicial officer and override the bond set by the magistrate, that duty was not clearly established.

Certainly Plaintiffs were free to demand a minimum bond since no probable cause finding had been made, but that is a long way from laying the alleged constitutional violation at the feet of Defendants Huddleston and Tirey. If law enforcement is permitted to decide when a judicial officer has correctly fulfilled his or her responsibilities, such law enforcement officers could also decide that a bond is not high enough or a release order is not appropriate. This could easily lead to a system of justice with only one branch—the executive branch—thus nullifying the

courts' important role. If Plaintiffs were unhappy with the action or inaction of the magistrate, they should have sought judicial relief at that time.

Finally, Plaintiffs' argument that Defendants committed a clearly established violation of law becomes even less convincing when considering that Ala. R. Crim P. 4.3(a)(1)(iii) does not speak directly to the responsibilities of individuals in Defendants' positions. Rather, the Rule merely states that "[a] judge or magistrate in the county of arrest shall [within forty-eight hours of arrest] determine whether probable cause exists." *See* Ala. R. Crim. P. 4.3(a)(1)(iii). To the extent that Rule 4.3(a)(1)(iii) assigns to a state official the duty to ensure a probable cause hearing, it is the "judge or magistrate" who is charged with making the probable cause determination. Unlike the relevant rules in some other jurisdictions, Ala. R. Crim. P. 4.3(a)(1)(iii) does not assign to either the arresting officer or the sheriff the duty of ensuring that such probable cause hearings are held.[8] Thus, this Court cannot say that Defendants were "on notice" that their conduct violated Plaintiffs' Fourth Amendment rights.

---

[8] *Cf.* Miss. Code Ann. § 99-3-17 ("Every person making an arrest shall take the offender before the proper officer without necessary delay for examination of his case . . . ."); Mich. Comp. Laws Ann. § 764.13 ("A peace officer who has arrested a person for an offense without a warrant shall without unnecessary delay take the person arrested before a magistrate of the judicial district in which the offense is charged to have been committed, and shall present to the magistrate a complaint stating the charge against the person arrested.").

### 3.    *Qualified Immunity with Respect to Unlawful Detention Claims Brought By Harrison*

The Court examines Harrison's claims separately from those brought by the other Plaintiffs since, unlike the other Plaintiffs, Harrison never appeared before a magistrate for an initial appearance and bond determination within forty-eight hours of his arrest. "[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint following [a warrantless] arrest." *Gerstein*, 420 U.S. at 114; *see also Riverside*, 500 U.S. at 56 (stating that, unless exigent circumstances exist, a jurisdiction will be considered to have violated a suspect's Fourth Amendment rights when, following a warrantless arrest, that suspect is held longer than forty-eight hours without being afforded an opportunity for a probable cause hearing); *Cherrington v. Skeeter*, 344 F.3d 631, 644 (6th Cir. 2003) (stating that "*County of Riverside* itself . . . would have alerted a reasonable official to the existence of [the plaintiff's] Fourth Amendment right to a judicial determination of probable cause within 48 hours").

However, the Court's analysis does not end at the finding of a clearly established right. Rather, the Court must also decide whether Huddleston and Tirey can be held responsible for such a violation. Phrased differently, the Defendants must be shown to be the proximate cause of the alleged constitutional violation. *See*

*Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007) (stating that "'it is clear that the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in the constitutional [violation]'" (quoting *Williams v. Bennett*, 689 F.2d 1370, 1375, 1381 (11th Cir. 1982))). When considering a claim alleging a violation of *Riverside*'s 48-hour rule, a court must look to state law to determine who is responsible for ensuring that suspects arrested without a warrant are afforded a prompt probable cause determination.[9]

Even if Harrison can show that he did not receive the judicial process required under the Fourth Amendment, he fails to show a violation of clearly established rights by *these* Defendants unless he can show that Huddleston or Tirey had the duty to follow up with the status of his case post-arrest. To do so, Harrison must allege facts showing how Huddleston or Tirey failed to discharge an obligation imposed upon them by state law, and how failure to carry out that obligation caused the violation of Harrison's Fourth Amendment rights. In other words, Harrison must show that Defendants had an obligation to review the performance of the judicial officers to

---

[9] *See* W*ilson v. Montano*, 715 F.3d 847, 854–55 (10th Cir. 2013) (holding that New Mexico state law places a duty on the arresting officer to ensure that warrantless arrestees are carried before a magistrate judge for a probable cause hearing); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 351 n.24 (5th Cir. 2012) (same); *Drogosch v. Metcalf*, 557 F.3d 372, 379 (6th Cir. 2009) (same).

make sure those officers complied with Ala. R. Crim. P. 4.3. Such facts are essential not only for determining whether the Defendants' failure to take steps to ensure a probable cause hearing was held was contrary to the actions that a "reasonable officer" in Defendants' positions would have taken, but also whether Defendants were the proximate cause of the potential constitutional violation. *See Lindsey v. Storey*, 936 F.3d 554, 563 (11th Cir. 1991) (granting summary judgment for the law enforcement defendant against a wrongful detention claim when the plaintiff "provided no evidence that [the defendant] was responsible for ensuring that inmates at the Monroe County Jail be promptly charged and arraigned").

Harrison argues that Ala. R. Crim P. 4.3(a)(1)(iii) acts as the source of Defendants' duty, requiring them either to ensure that a probable cause hearing is held within forty-eight hours following a warrantless arrest or to release the suspect on a minimum appearance bond. *See* Doc. 22, at 12. However, as discussed previously, Rule 4.3(a)(1)(iii) states only that "[a] judge or magistrate . . . shall determine whether probable cause exists to believe that the defendant committed the charged offense." Rule 4.3(a)(1)(iii) is silent as to any obligation *for the arresting officer* to ensure that a warrantless arrestee is carried before a magistrate, or to otherwise ensure that a probable cause determination is held. Furthermore, only if probable cause is found by

that magistrate does the Rule require that a criminal complaint be filed; otherwise Rule 4.3 mandates that the arrestee be released on a minimum appearance bond. *See* Ala. R. Crim. P. 4.3(a)(1)(iii). Thus, Alabama's procedure differs considerably from other states' laws that impose a duty on a specific member of law enforcement (usually the arresting officer) to take steps to initiate the necessary post-arrest judicial proceedings. *Cf.* Ala. R. Crim. P. 4.3(a)(1)(iii) (stating merely that "[a] judge or magistrate in the county of arrest shall [within forty-eight hours of arrest] determine whether probable cause exists") *with* Ga. Code Ann. § 17-4-62 (2010) (stating that "[i]n every case of arrest without a warrant, the person arresting shall, without delay, convey the offender before the most convenient judicial officer authorized").

Furthermore, Ala. Code § 15-13-105, not cited by the parties but examined here nonetheless, also fails to impose an obligation on Huddleston to ensure that Harrison received a probable cause hearing or be released from custody. Section 15-13-105 discusses the procedure for ensuring bail in warrantless arrest cases, and states that:

> In cases where a defendant is arrested without a warrant and taken into custody and there is no standard bail schedule prescribed by the presiding judge . . . then the arresting officer shall, as soon as possible, contact a judicial officer for an order of bail. . . . If no judicial officer has issued an order of bail within 24 hours of the arrest of defendant, then the bail shall be set by operation of law and the amount of bail shall be the amount prescribed as the minimum amount established by the bail schedule . . . .

Ala. Code § 15-13-105 (2014).

Section 15-13-105 assigns to the arresting officer the task of obtaining an order of bail following a warrantless arrest if there is no bail schedule. There are no facts before the Court to indicate whether there is such a schedule. Furthermore, § 15-13-105 states that, if no bail has been set within the twenty-four hours following a suspect's warrantless arrest, then bail "shall be set by operation of law." Section 15-13-105 does entitle warrantless arrestees to a minimum bond amount if no bond has been set within twenty-four hours, but the statute does not specify who is responsible for reviewing jail records to ensure that warrantless arrestees are not detained for longer than twenty-four hours without such a bond amount being set. Thus, § 15-13-105 cannot be said to clearly impose a duty on an arresting officer to set minimum bail, nor can it be said to put a reasonable officer in Huddleston's position "on notice" that his conduct would result in a violation of Harrison's Fourth Amendment rights.

Reviewing the complaint, Harrison's causation argument rests almost entirely on Huddleston's failure to "promptly" submit a criminal complaint and warrant application following Harrison's warrantless arrest. This Court will not consider Huddleston responsible for Harrison's prolonged detention based solely on his failure

to file a criminal complaint within forty-eight hours, especially when there is no state-law imposed duty requiring him to do so. While Ala. R. Crim P. 4.3(a)(1)(iii) does require that a criminal complaint be "promptly prepared, filed, and served" following a warrantless arrest, the Rule does not state that such actions must be taken within forty-eight hours of the arrest. In fact, the Rule expressly contemplates a complaint being prepared *after* a probable cause determination is made, and only on the condition that probable cause is first found to have existed for the warrantless arrest. *See* Ala. R. Crim. P. 4.3(a)(1)(iii) ("*If* the judge or magistrate finds there is probable cause for the arrest of the person, a complaint shall be promptly prepared, filed, and served on the defendant . . . ." (emphasis added)).

Harrison also cites to Ala. R. Crim. P. 4.3(a)(2) in support of his argument that Huddleston had an obligation to file a criminal complaint within forty-eight hours or otherwise release him. Rule 4.3(a)(2) states that:

> If a person arrested without a warrant has been released and cited or directed to appear without having been taken before a judge or magistrate for a probable cause determination, the officer or private person who made the arrest shall without undue delay make a complaint before a judge or magistrate.

Ala. R. Crim. P. 4.3(a)(2). While Rule 4.3(a)(2) does assign a duty to the arresting officer to make a complaint before a magistrate "without undue delay," the Rule's

language makes clear that this duty applies only in situations where the warrantless arrestee "has been released" from custody prior to a probable cause determination. Thus, Rule 4.3(a)(2) is inapplicable for the period of Harrison's confinement.

The complaint also suffers from several other causal defects. For example, Harrison has failed to plead any facts showing that Huddleston or Tirey even knew that Harrison was detained longer than forty-eight hours without a probable cause hearing. In fact, following the applicable statute for setting bond in warrantless arrest cases, it appears that Harrison would be granted a minimum appearance bond "by operation of law" following twenty-four hours of confinement. *See* Ala. Code § 15-13-105. Concerning the direct § 1983 claim against Sheriff Tirey, the mere fact that some of the Jail staff likely knew of Harrison's prolonged detention and did not act to release him does not amount to "personal involvement" on Tirey's behalf. *See, e.g.*, *Sanders v. United States*, 760 F.2d 869, 872 (8th Cir. 1985) (stating that dismissal is appropriate when the complaint does not contain allegations of personal involvement or behalf of a defendant, and does not state that the defendant has knowledge of the specific actions that resulted in the injury to the plaintiff's constitutional rights). Rather, Tirey's liability must be assessed under a supervisory liability theory, which requires the existence of a policy or custom, a history of

widespread abuse, or knowledge and direction on behalf of the supervisory defendant. *See infra* Part III.B.4.

In sum, while Harrison has pled facts showing that he was detained in excess of forty-eight hours without being provided the probable cause hearing required under the Fourth Amendment, he has not shown how Huddleston or Tirey's failure to follow a state-law imposed duty *caused* this constitutional violation. As is often stated, the doctrine of qualified immunity exists to protect "all but the plainly incompetent or those that knowingly violate the law." *See Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991).

### 4.    *Supervisory Claims Against Tirey*

Plaintiffs also bring a supervisory liability claim against Tirey, alleging that he disregarded numerous previous occasions in which Huddleston failed to file the paperwork necessary to ensure that a probable cause hearing was held. An official may be liable in a supervisory capacity under § 1983 when there is a causal connection between his subordinates' unconstitutional conduct and the official's own actions. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010). Other than personal participation on behalf of the defendant, the plaintiff may establish the necessary causal connection by showing (1) that there was "a history of widespread

abuse," thereby putting the supervisor on notice of the constitutional violation; (2) that the supervisor imposed "a custom or policy . . . resulting in deliberate indifference to constitutional rights"; or (3) that the supervisor "directed the subordinates to act unlawfully or knew [they] would act unlawfully and failed to stop them from doing so." *See id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003)).

With respect to the supervisory claims brought by Cassels, Rhodes, Colburn, and Elliott, Tirey is entitled to qualified immunity for the same reasons he was entitled to qualified immunity for these Plaintiffs' claims alleging direct violations. The record indicates that Cassels, Rhodes, Colburn, and Elliott were promptly brought before a magistrate, and the fact that the magistrate did not conduct a probable cause hearing is not an error that can be attributed to Tirey's personal actions, his willful disregard of prior violations, or his imposition of a "policy or custom." While Plaintiffs argue that Tirey had knowledge that Huddleston delayed in submitting paperwork for warrants following warrantless arrests, his inaction in addressing this concern cannot be considered the "cause" of Plaintiffs' prolonged detention when law enforcement lacked authority to release Colburn, Cassels, Rhodes, and Elliott following the magistrate's order setting a bond amount. Clearly, it was the responsibility of the

Alabama judicial officer to conduct the probable cause hearing and set bond; the judicial officer's failure to perform his or her duty cannot be charged to Tirey. Consequently, Colburn, Cassels, Rhodes, and Elliott's supervisory liability claims are due to be dismissed.

Harrison's supervisory liability claim also fails to show causation, and thus is due to be dismissed. Harrison alleges that Tirey was aware that Huddleston routinely waited longer than forty-eight hours to submit criminal complaints and obtain after-the-fact arrest warrants following warrantless arrests. Harrison argues that, by ignoring this behavior, Tirey can be considered responsible for the alleged violations. He further asserts that these actions were a "policy or practice" knowingly condoned at the Walker County Sheriff's Office. For the reasons discussed *supra*, Part III.B.3, Huddleston's delay in preparing criminal complaints and warrant applications cannot be considered the proximate cause of the alleged violation to Harrison's rights, especially when state law fails to impose a duty on Huddleston to complete such paperwork within forty-eight hours after a warrantless arrest.[10]

_____

[10] The interplay between Ala. R. Crim. P. 4.3(a)(1)(iii) and Ala. R. Crim. P. 2.4 also shows that a criminal complaint and warrant application is not a prerequisite for a probable cause determination. Rule 4.3(a)(1)(iii) directs magistrates to Rule 2.4 for the procedures to be followed when making a probable cause determination, and Rule 2.4 accounts for other means by which a magistrate may determine whether probable cause exists, such as witness testimony and affidavits. *See* Ala. R. Crim. P. 2.4 advisory committee's note. Thus, the filing of a warrant application is not a necessary prerequisite for holding a probable cause hearing such that knowledge of an officer's

### C.    Plaintiffs' Claim for Injunctive Relief

Finally, Plaintiffs bring a claim for injunctive relief against Tirey and Huddleston, urging the Court to enjoin Defendants from continuing their "practice of deliberate indifference . . . of detaining and confining citizens without seeking a warrant." For a plaintiff seeking prospective relief to have standing, he "'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265 (11th Cir. 2001))). The mere occurrence of a past injury is not sufficient to support an inference of standing to seek prospective relief for future injuries. *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief"); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983) (stating that the mere assertion that one may be subject to an unconstitutional police policy in the future does not generally give rise to standing).

Plaintiffs here do not allege that they are personally likely to be rearrested and subjected to the same unconstitutional conduct. However, Plaintiffs do attempt to gain standing by arguing that the injury suffered is one so "inherently transitory" that

---

failure to do so would alert a supervisor to a pattern of unconstitutional violations.

it will continue to evade judicial review. *See* Doc. 22, at 27. However, this argument invokes a concept by which federal courts avoid a finding of mootness, rather than a doctrine that allows a plaintiff to establish standing for an injunctive action where the threat of future injury is otherwise too speculative. For Plaintiffs here to have standing to seek their desired prospective relief, they must show a "real and immediate" threat that they will again be arrested and subjected to constitutional harm by Defendants. *See Lyons*, 461 U.S. at 101–03. Plaintiffs have failed to plead facts supporting such a conclusion, and it is entirely speculative that these Plaintiffs will once again find themselves booked into the Jail and subjected to Defendants' allegedly unconstitutional conduct. *See id.* at 99–104 (finding it too speculative that the plaintiff would again be arrested for a traffic offense and subjected to unconstitutional conduct by the arresting officer); *cf. Church v. City of Huntsville*, 30 F.3d 1332, 1337–38 (11th Cir. 1994) (finding that homeless individuals had standing to seek equitable relief because, unlike most arrestees alleging constitutional injury due to police conduct, the plaintiffs' status as homeless persons made it extremely likely that they would again be arrested for violating laws prohibiting them from congregating in public places).

Because Plaintiffs here cannot show a sufficient likelihood that they will be subjected to the same allegedly unconstitutional conduct in the future, they lacked

standing to pursue injunctive relief from the outset of this lawsuit. The Plaintiffs' cited exception to the mootness doctrine cannot preserve standing where it never existed in the first place. Thus, Huddleston and Tirey's motions to dismiss are due to be granted with respect to Plaintiffs' claims for injunctive relief.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are due to be GRANTED as to all claims brought by Colburn, Elliott, Rhodes, Cassels, and Harrison. (Doc. 13 in Case No. 7:14-cv-1942-LSC; Doc. 16 in Case No. 7:14-cv-1943-LSC; Doc. 15 in Case No. 7:14-cv-1944-LSC; Doc. 14 in Case No. 7:14-cv-1945-LSC; Doc. 14 in Case No. 7:14-cv-1946-LSC .)

A separate order will be entered.

Done this 30th day of March 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822